## RUSSELL *v.* BARNHART MERCANTILE COMPANY.

### Opinion delivered June 13, 1921.

1. SALES—FAILURE TO GIVE SHIPPING DIRECTIONS—WAIVER.—Where a buyer, suing for breach of a contract of sale, failed to give shipping directions within sixty days as agreed, and the seller subsequently set aside and stored the goods, insisting that the buyer take them, this did not constitute a waiver of the buyer's breach in failing to order the goods shipped, and the court properly directed a verdict in favor of the seller.

2. GARNISHMENT—ALLOWANCE OF INTEREST TO DEFENDANT.—A judgment allowing defendant 6 per cent. interest on the total sum of money impounded by garnishment was proper, where the garnishment was discharged.

Appeal from Jefferson Circuit Court; *W. B. Sorrells,* Judge; affirmed.

*Rowell & Alexander,* for appellant.

The court erred in giving a peremptory instruction for appellee. There is only one disputed fact in the case, and that in reference to the amount of damages which appellant alleged he sustained by reason of the failure of appellee to deliver the peanuts.

No shipping instructions were given prior to the expiration of the sixty days provided for in the contract, but the contract called for shipment at "buyer's option within sixty days," and the failure of the buyer to exercise his option is equivalent to a demand for delivery on the last day. 35 Cyc. 582.

Appellee elected to treat the contract as still in force and weighed up the peanuts, invoiced them to appellant and stored them in its warehouse and sent the invoice to appellant. This action of appellee was acquiesced in by appellant and operated as a complete transfer of title to the peanuts from appellee to appellant. 35 Cyc. 315. Under the facts and proof it was error to direct a verdict for appellee. 24 R. C. L. 94. There were no disputed facts for submission to a jury. The action of appellee in weighing the peanuts, storing them in its warehouse and invoicing them to appellant, constituted a mere extension of time in which shipment might be ordered and gave appellee no right to impose other restrictions or additional obligations upon appellant to secure delivery. The failure of appellee to ship the peanuts when ordered out prior to November 1, 1919, constituted a breach of the contract by appellee, and it was error to instruct a verdict. Judgment should be entered here for appellant for $527.73 and interest at six per cent. from October 29, 1919.

*Crawford & Hooker,* for appellee.

There was no waiver on part of appellee, as the testimony shows it complied strictly with the rules of the Peanut Cleaners and Shellers Association in weighing up the peanuts and invoicing them out to appellant, and appellant's failure to pay was a breach of contract on his part, which appellee has never waived. A waiver to be binding must either operate as an estoppel or be supported by a valuable consideration. 72 Ark. 529; 29 A. & E. Enc. Law (2 ed.) 1097. There was no waiver by appellee. 102 Ark. 442. See, also, 88 Ark. 491; 22 *Id.* 258; 38 *Id.* 174.

Where there is a mutual contract for the performance of successive acts, the refusal upon one side to perform will justify the other party in treating the contract as rescinded. 38 Ark. 174; 78 *Id.* 336; 64 *Id.* 228; 65 *Id.* 320.

SMITH, J. Appellant is a merchandise broker engaged in business in the city of Pine Bluff. Appellee is a corporation engaged in the business of selling edible nuts, with places of business in Petersburg, Virginia, and St. Louis, Missouri.

Through the St. Louis office, on July 7, 1919, appellant ordered six hundred sacks of fancy hand-picked peanuts, and this order was evidenced by a written sales contract. In this contract the following provisions appear:

"Time of Shipment. Buyer's option within sixty days. "Terms of Sale, Net Cash. SD B-L attached F. O. B.
Petersburg, Va.

| "Quantity | Grade and Description | Price |
|-----------|----------------------|-------|
| 600 | Sax Magnolia Fancies | 11 |

"Endorsed on Face: 'Shipment in 60 days as wanted.'"

It was further provided that "All contracts subject to rules and regulations of the National Peanut Cleaners and Shellers Association."

It is not disputed that appellant failed—although frequently requested—to order shipment of peanuts within the sixty days from the date of the contract. An extended correspondence in regard to the peanuts occurred, and a number of telegrams were exchanged. On September 29, 1919, appellee wrote appellant the following letter:

"We weighed up on the 27th inst. the 600 bags of Magnolias we had booked for you and stored these goods on our second floor, also rendering you an invoice covering this purchase. We must have shipping instructions on these goods before November 1, as we will need our room for new crop after this date. It will be necessary for us to charge you 3 cents per bag per month storage

on these 600 bags to comply with rules of the association. We shall expect for you to remit us covering this purchase within ten days from the date of invoice. This will comply with the terms of purchase."

It appears to be undisputed that in weighing up and invoicing the peanuts, and in charging the price thereof to appellant's account, appellee was acting within its rights under the rules and regulations of the National Peanut Cleaners and Shellers Association. Later appellee drew on appellant, with invoices attached, for the price of the peanuts, but the draft was not protected and was returned unpaid. Appellant appears, at all times, to have admitted his obligation to accept and pay for the peanuts. He had difficulty in disposing of them without sustaining a loss, and he asked indulgence in the way of furnishing shipping orders for the peanuts, although appellee continued to insist on these directions being given. There was correspondence, by letter and by telegram, in regard to a proposed resale of the peanuts for appellant's account, but the parties were unable to agree on the price at which they might be resold.

As the time for the new crop of peanuts to move came on appellee became more insistent in its demands for payment of the purchase price of the peanuts, and several letters of a peremptory character were sent, in which appellant was advised that if remittance was not made forthwith the peanuts would be sold for appellant's account at the best price obtainable. During all this time the quotations on peanuts were under the sales price, yet appellant, at all times, professed his intention to comply with his contract.

On October 25, 1919, appellant sent the following shipping instructions to appellee:

"Ship to ourselves c-o Jno. H. Poston Warehouse, Inc., at Memphis, Tenn., via rail. Terms: Draft through Bank of Commerce & Trust Co., Memphis, Tenn. Mail invoice to us at Pine Bluff, Ark., 300 sx. Magnolia Peanuts 11c and storage.

"Remarks: Examine carefully for worms or webs before shipping."

In response to this telegram appellee wired appellant as follows:

"Letter received; will not make shipment Memphis car fancies until you remit us covering our invoice September twenty-seventh; also storage and insurance; terms were net cash ten days from date of invoice; account been standing thirty days; wire immediately if you are sending New York Exchange or not."

On October 29 appellant sent the following telegram:

"We decline to remit for peanuts. Ship both cars to Memphis, include storage and insurance in drafts. Mr. Russell was absent from office yesterday."

On October 30 appellee sent the following telegram:

"Telegram received; we decline to make shipment until you pay our invoice and charges; will sell goods immediately best price possible."

On the same day appellant wired as follows: "Replying we renew demand for shipment; if you sell peanuts, you will do so at your own peril."

To this telegram the following reply was received: "Telegram rec'd; we demand cash before making shipment; ultimatum."

Thereafter several telegrams and letters passed between the parties, and appellant offered to file a bond for a thousand dollars to insure prompt payment of draft covering invoices and all charges, but appellee continued to refuse to ship until receipt of exchange for the full amount of the invoices and charges.

In the meantime the price of peanuts commenced to advance, and appellant brought suit for breach of contract and prayed judgment for the difference between the contract price and the market quotations of the peanuts. There was a trial before a jury, which terminated in an instructed verdict for appellee, from which is this appeal.

Appellant admits that he did not comply with the contract by furnishing shipping directions within sixty days, but he says this breach was waived when appellee weighed up and stored away the peanuts for his account, that this act of appellee operated as a complete transfer of the title to the peanuts, and that thereafter appellee should have shipped them in accordance with his directions. Appellant further contends that invoicing and storing the peanuts was a mere extension of time in which shipment might be ordered, and that he had the right to order shipment made pursuant to the terms of the original contract, towit: with draft attaached to the bill of lading issued by the railroad over which shipment had been ordered made.

We think the court properly directed a verdict in this case. The undisputed testimony shows that appellee waived none of its rights under the contract, that it at all times offered to perform and insisted on performance.

Under the contract and rules of the National Peanut Cleaners and Shellers Association, it was appellant's duty to furnish shipping directions within sixty days from the date of the contract, and if this was not done appellee had the right to invoice and store away the peanuts for the purchaser's account and to demand payment within ten days after invoicing the peanuts to the purchaser. Appellant failed to furnish shipping directions, or to honor draft with invoice attached. He was, therefore, in default and had no right to demand shipment after the sixty days under the terms which were available for sixty days or until peanuts had been stored and invoiced. In other words, appellant attempted on October 25 to avail himself of a right which his contract required him to exercise within sixty days after July 7, 1919, or before the peanuts had been invoiced or stored. Appellee was guilty of no waiver which gave appellant this right, and the verdict was therefore properly directed in appellee's favor.

Appellant prayed judgment in his complaint for $1,130.31 with six per cent. interest from the date of the filing of the complaint until paid, and for a writ of garnishment against the Hammett Grocery Company and C. M. Ferguson & Son to impound any funds in their hands belonging to appellee.

The garnishees, C. M. Ferguson & Son and the Hammett Grocery Company, filed answers, stating that they had in their hands and possession the sum of $649.44 and $949.32, respectively. The court gave judgment for interest at six per cent. on the amount of money in the hands of the garnishees, towit: $1,598.76, from the date of the garnishments until paid.

Appellant insists, upon the authority of the case of *Brown* v. *Yukon National Bank,* 138 Ark. 210, that it was error to render judgment against appellant for interest on the total amount in the garnishees' hands—the amount sued for and the costs being the basis for computing the interest. In the case cited the facts were that the sum garnished bore no fair proportion to the sum sued for. The sum sued for was $210, and the sum garnished was $2,303.50. The costs in the case amounted to only $20. After a recitation of these facts we held that interest should have been computed only on the $230, the amount of the debt and costs.

Here, however, neither garnishee owed the amount claimed by appellant. It required the sum due by both to equal the sum sued for, and we think no error was committed in rendering judgment for interest on the total sum impounded.